**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CR. NO. 03-30013-01** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **KENNETH E. WINES** | * | **MAGISTRATE JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. # 247) filed by petitioner Kenneth Wines ("Wines"). For reasons stated below, it is recommended that the motion be **DENIED.**

**BACKGROUND AND PROCEDURAL HISTORY**

On September 30, 2002, a Ouachita Parish sheriff's deputy stopped a vehicle in Monroe, Louisiana. The deputy ascertained that the driver of the vehicle was Marvin Chappell ("Chappell"). During the course of the stop, the deputy obtained consent to search the vehicle and discovered a package of crack cocaine. The deputy arrested Chappell, who subsequently agreed to cooperate with law enforcement in a scheme to ensnare his co-conspirators.

Chappell telephoned a "Felicia" in Lake Providence, Louisiana, who placed a three-way call to Wines' cell phone and asked for Bernice Woodson ("Woodson"). Wines and Mr. Woodson had driven to Monroe on that same day for a court appearance, and Aurora Shine ("Shine") had come along with them. Chappell told Woodson that he needed his assistance because his car had broken down. Wines, Woodson, and Shine drove to Chappell's location.

After a police officer posing as a mechanic arrived, Wines and Shine drove away and Woodson stayed with Chappell. Woodson was arrested at the scene of the staged broken down vehicle and Wines and Shine were arrested after being stopped heading westbound on Interstate 20.

Based on information acquired through a post-arrest investigation, the police obtained a warrant to search a residence at 1651 Blue Meadow in Dallas, Texas. The search resulted in the seizure of 262 grams of crack cocaine and 7.4 ounces of marijuana as well as seven firearms, a digital scale, and more than $30,000 in cash. The residence was leased to a "Tyrone Davis," whom the landlord of the residence, Larene Smith ("Smith"), identified at trial as Kenneth Wines.

On April 23, 2003, a federal grand jury returned an indictment against Wines, Woodson, and Shine. Counts One, Two, and Three, respectively, charged them with conspiracy to distribute crack cocaine, conspiracy to distribute marijuana, and possession with intent to distribute crack cocaine. On March 25, 2004, the federal grand jury added two more counts against Wines. Count Four charged him with possession of a firearm in furtherance of a drug trafficking crime and Count Five was a forfeiture count. After a two-day jury trial, Wines was found guilty of Counts One, Two, Three, and Four, and was subsequently sentenced to 420 months of imprisonment. On April 9, 2007, the Fifth Circuit affirmed the defendant's conviction.

Wines filed the instant motion on June 17, 2008. He asserts that he was denied the effective assistance of counsel by his trial attorney, Walter Caldwell ("Caldwell"), for the following reasons: (1) Caldwell failed to call Wines' probation officer to testify; (2) Caldwell failed to discuss Wines' case with him and failed to do what Wines asked him to do, ultimately

culminating in a "breakdown in communication" between Caldwell and Wines; and (3) Caldwell failed to call Wines to testify in his own behalf.[1]

On July 30, 2009, an evidentiary hearing was held "specifically regarding - but not limited to - [Wines'] claim that his counsel rendered ineffective assistance in failing to allow him to testify at trial." (Doc. # 262, 1).

**LAW AND ANALYSIS**

The Law of § 2255 Actions

Issues that a defendant can present in a motion filed under 28 U.S.C. § 2255 are limited. There are, essentially, four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255; *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992). The scope of relief under § 2255 is consistent with that of the writ of habeas corpus. *Cates*, 952 F.2d at 151; *see also United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

---

[1] In the instant motion, as well as in his pre-hearing brief, Wines asserted three other grounds for his ineffective assistance of counsel claim: (1) Caldwell failed to investigate Chappell "and the many names of persons involved in the drug conspiracy that he gave without mentioning Mr. Wines' name" (Doc. # 286, 5); (2) Caldwell failed to question Woodson's ability to read and write in light of the written statement that Woodson gave to the police (*Id.* at 5); and (3) Caldwell failed to "question the fact that all the information provided against Mr. Wines was given by Ms. Shines, and Mr. Woodson and Mr. Chappell did not mention Mr. Wines' name until Ms. Shines gave her statement" (*Id.* at 6). However, these claims were waived by Wines when he failed to address them in his briefs or at the hearing. *Goldin v. Bartholow*, 166 F.3d 710, 716 (5th Cir. 1999) ("Failure to brief and argue an issue constitutes waiver."). Furthermore, even if they had not been waived, there is no evidence to suggest that any of the above-challenged actions fell outside the range of reasonable competence or that they otherwise have merit.

Only cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995); *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

In *United States v. Vaughn*, the United States Court of Appeals for the Fifth Circuit stated:

> [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *U.S. v. Capua*, 656 F.2d. 1033, 1037 (5th Cir. 1981). Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding.

*United States v. Vaughn*, 955 F.2d 367 (5th Cir. 1992).

Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*). Thus, even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*citing Shaid*, 937 F.2d at 232); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995). Of course, issues raised and disposed of on direct appeal are not subject to further review under section 2255. *See Segler*, 37 F.3d at 1134.

Even if a defendant cannot establish "cause" and "prejudice," he may still be entitled to

relief under § 2255 if there is a constitutional error which would result in a complete miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495-6, 106 S.Ct. 2639, 2649 (1986); *Bousley v. United States*, 523 U.S. 614, 620-2, 118 S.Ct. 1604, 1610-1611 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991). Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent. *Shaid*, 937 F.2d at 232.

Ineffective Assistance of Counsel

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *United States v. Gipson*, 985 F. 2d 212 (5th Cir. 1993); *United States v. Navejar*, 963 F. 2d 732, 735 (5th Cir. 1992). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-7, 104 S.Ct. 2052, 2063-64 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green*

*v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland* at 689-690, 2065-66. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland* at 690, 2066; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1993); *see also, Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

*A. Counsel's Failure to Call Wines' Probation Officer to Testify*

Wines first contends that he was denied the effective assistance of counsel because Caldwell failed to call Wines' probation officer to testify at trial.[2] Wines would specifically seem to argue that his probation officer would have testified that Wines did not live at 1651 Blue

[2] This claim, like the claims mentioned in the preceding footnote, was also not briefed and argued by Wines. However, the court will consider the claim because it was referenced at the hearing during Caldwell's direct examination.

Meadow in Dallas, Texas, at the time of the search, and therefore would have contradicted Smith, who identified Wines at trial as the person to whom she leased the residence. This argument, however, is unavailing.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Furthermore, "the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id.*

At the hearing in this matter, Caldwell testified that he first learned about the probation officer in a conversation with Wines that occurred after the jury returned its verdict. (Hr'g. 34). Clearly then, Wines could not have been denied the effective assistance of counsel because he supplied Caldwell with the pertinent information at a time when Caldwell could not use it to Wines' advantage. However, assuming *arguendo* that Caldwell should have learned about the probation officer through his own investigations, Wines cannot demonstrate that he was prejudiced by Caldwell's failure to call the officer. At trial, Wines' mother testified that Wines moved from the 1651 Blue Meadow residence in March of 2002, several months before the search occurred. (Tr. 223). Wines' mother also testified that Woodson and Chappell moved into the 1651 Blue Meadow residence at about the same time. (Tr. 224). Accordingly, Wines cannot demonstrate that there is a reasonable probability that the probation officer's testimony would have led to a different result at his trial, given that the jury had heard, and had not been persuaded by, similar testimony from Wines' mother. *See Williams v. United States*, 294 Fed. Appx. 460,

463 (5th Cir. 2008); *Van Poyck v. Florida Department of Corrections*, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative."). Furthermore, testimony from the probation officer, unlike testimony from Wines' mother, would have notified the jury that Wines was on probation for other crimes, and therefore might have actually hurt his case.

*B. Counsel's Failure to Communicate with Wines*

Wines next contends that he was denied the effective assistance of counsel because Caldwell neither discussed the case with him nor pursued his directives. At the hearing, Wines testified that he met with Caldwell only twice, and that Caldwell would not accept his phone calls. (Hr'g. 10-11). Wines also testified that Caldwell did not believe that he was innocent and that the two of them "weren't communicating." (Hr'g. 18).

Counsel has a duty to "consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). Furthermore, counsel has a duty to follow his client's express instructions regarding important decisions, such as filing a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

The record indicates that Wines cannot prevail on this particular claim. Outside of Wines' claim that Caldwell prevented him from testifying, which will be addressed below, Wines does not specify any particular decisions about which Caldwell failed to consult with him or any particular directives that Caldwell failed to follow.

Moreover, "brevity of consultation time between a defendant and his counsel, without

more, cannot support a claim of ineffective assistance of counsel." *Mattheson v. King*, 751 F.2d 1432, 1439 (5th Cir. 1985). Wines has not provided the court with any evidence which indicates that a lengthier communication between himself and Caldwell would have changed the result at trial, and the record is also silent on this point. Accordingly, the court cannot grant Wines any relief on this basis.

*C. Counsel's Failure to Call Wines to Testify*

Wines' final contention is that he was denied the effective assistance of counsel because Caldwell prevented him from testifying. This argument, however, also fails.

"A criminal defendant has the right to take the stand and testify in his or her own defense." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). When a defendant contends that her attorney interfered with her right to testify, her claim properly falls under *Strickland*'s two prong test. *Id.*

"It cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice." *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002). To demonstrate that counsel overrode the defendant's decision to testify, the defendant must provide the court with something more than an assertion that she wanted to testify but her counsel prevented her from doing so. *See id.* at 455 (finding that counsel overrode defendant's decision to testify based on counsel's admission at an evidentiary hearing that she prevented the defendant from testifying). However, when the record "is simply that the defendant knew of his right to testify and wanted to do so but counsel was opposed ," courts will find that "defendant acquiesced in his lawyer's advice," and inquire only into whether "that advice was sound trial strategy." *Id.* at 453-54. Finally, as with all strategic

decisions made by counsel, the defendant "must overcome a strong presumption that counsel's decision not to place him on the stand was sound trial strategy." *Sayre*, 238 F.3d at 635.

At the hearing, Wines testified that he expressed his interest in taking the stand to Caldwell but that Caldwell declined to call him. (Hr'g. 19-22). Wines also testified that he did not express his interest in taking the stand to the trial judge because he was unaware of courtroom procedures. *Id.* In contrast, Caldwell testified that he and Wines "probably discussed" Wines' right to testify and that he "probably advised" Wines against testifying, although Caldwell did not specifically remember telling Wines that he had a right to testify. *Id.* at 31. Caldwell further testified, "I have never told [a defendant], 'You cannot testify.' I've never told [a defendant], 'You must testify.' I've always told [defendants], 'That's one of the decisions that you get to make in this case is whether or not you testify.'" *Id.* at 32.

Unlike the record in *Mullins*, the record in this case is silent, outside of Wines' and Caldwell's self-serving assertions, on whether Caldwell prevented Wines from taking the stand at trial. The notes that Wines wrote to Caldwell during the trial in which Wines made recommendations to Caldwell about litigating his case do not mention Wines' desire to testify. (Ex. 13, 21-30). The letters that Wines wrote to Caldwell after the trial in which Wines complained of Caldwell's handling of his case also do not mention Wines' desire to testify. (Ex. 13, 31-34, 40-48). Thus, Wines has not demonstrated that Caldwell overrode his decision to testify. *See Mullins*, 315 F.3d at 455. Accordingly, this court will inquire only into whether Caldwell's decision not to call Wines was sound trial strategy. *See Sayre*, 238 F.3d at 635.

At the hearing, Caldwell testified that he did not call Wines because he did not want

Wines to be subsequently impeached with a prior drug conviction.[3] (Hr'g. 32). Wines argues that Caldwell's decision not to call Wines was not sound trial strategy because Wines' mother referenced her son's criminal activity at several points during her testimony,[4] thereby negating Caldwell's rationale for not calling Wines. However, if Wines had testified, the government could have entered formal evidence of Wines' conviction into the record under Fed. R. Evid.

---

[3] The presentence investigation report provides that on May 4, 1994, Wines pleaded guilty to possession with intent to deliver cocaine and was sentenced to five years imprisonment.

[4] For example, the following exchange between Caldwell and Mrs. Wines occurred during Wines' case-in-chief:

Q. How did you meet Mr. Woodson?

A. I met him back in '93 when [Wines] first got his case, first case. I had to come to Louisiana because they had - some kind of way they gave him a sack and told him to run with it and put it up. And when he came back, he was picked by the police and went to jail. So when I called him, they told me that they were going to get him, but they weren't moving fast enough because my son was too young to be in jail. And he wasn't about to be in there too. So I said, 'Tell y'all what, if y'all don't go and get my son out, I'm going to make him tell on y'all.'

Q. You're talking about Bernice Woodson?

A. Yes. (Tr. 224).

Furthermore, the following exchange between the government's lawyer and Mrs. Wines occurred during Mrs. Wines' cross-examination:

Q. I believe you said something about [Woodson] being involved in drugs in 1998.

A. 1995, '94.

Q. Okay.

A. '93, when my son got busted, he gave him them drugs. [Wines] was, like, 17, 18 years old. [Woodson] told [Wines] to run with it because they was having big . . . a big drug bust in Dixie Circle. I was living in Louisiana. My sister called me and told me that they had got my son . . . .

Q. Okay. And when was this?

A. In '92, if I'm not mistaken, 1992. Yeah, 1992.

Q. And the police had him?

A. Yeah, and he was in jail.

Q. For what?

A. Drugs.

Q. Do you know what kind?

A. Cocaine. (Tr. 228-29).

609(a)(1) and would have been entitled to jury instructions reminding the jury of Wines' prior conviction.[5] Thus, while Wines may be able to demonstrate that another lawyer in Caldwell's position would have called Wines, Wines cannot overcome the "strong presumption that counsel's decision not to place him on the stand was sound trial strategy." *See Sayre*, 238 F.3d at 635.

Moreover, assuming *arguendo* that Wines could demonstrate that Caldwell's decision not to call him was not sound trial strategy, Wines cannot demonstrate that he was subsequently prejudiced for purposes of *Strickland*. Wines argues that his testimony at trial was necessary to rebut Woodson's testimony on the following four points: (i) Wines, Woodson, and Chappell were involved in a conspiracy to distribute drugs; (ii) Woodson worked for Wines; (iii) Wines cooked the crack cocaine that was found in Chappell's vehicle, and (iv) the crack cocaine and firearms found at 1651 Blue Meadow belonged to Wines. (Doc. # 296, 14-15).

Wines is correct in that this is certainly not a case where there was overwhelming evidence of guilt. Indeed, Wines was significantly younger than Woodson and Chappell, lending support to the theory that Caldwell attempted to develop at trial that Wines worked under Woodson and Chappell. Furthermore, Woodson, and not Wines, stayed with Chappell at the location of the staged broken down vehicle, lending support to another theory that Caldwell

---

[5] Had Wines testified, the government would have been entitled to the following jury instructions: "You have been told that the defendant was found guilty in of ______ [e.g., bank robbery]. This conviction has been brought to your attention only because you may wish to consider it when you decide, as with any witness, how much of the defendant's testimony you will believe in this trial. The fact that the defendant was previously found guilty of another crime does not mean that the defendant committed the crime for which the defendant is on trial, and you must not use this prior conviction as proof of the crime charged in this case." Jury Instruction 1.11, 2001 Fifth Circuit Criminal Jury Instruction, http://www.lb5.uscourts.gov/juryinstructions//crim2001.htm.

attempted to develop at trial that Wines did not even know that drugs were stored inside Chappell's vehicle. To the extent that Wines' testimony on these points would have strengthened both of these theories, the undersigned cannot say with absolute certainty that his testimony would not have been persuasive. The undersigned can say "that his testimony might have persuaded, but not that there is a reasonable probability that it would have done so." *Mullins*, 315 F.3d at 456.

Wines cannot demonstrate that there is a reasonable probability that his testimony would have led to a different outcome at trial for three reasons. First, Wines' mother's testimony rebutted Woodson's testimony on the same four points that Wines claims his testimony was necessary. *See Harris*, 408 F.3d at 192 (finding that a defendant was not prejudiced, in part, by his counsel's failure to call him to testify because the testimony that the defendant could have provided the trial court was elsewhere in the record). Second, the testimony that Wines stated that he would have provided at trial was occasionally inconsistent with his mother's actual testimony,[6] thereby suggesting that Wines' testimony at trial might actually have weakened his case. Finally, as was mentioned above, Wines' credibility would have been impeached by evidence of his prior conviction if he had testified at trial. The court therefore cannot find that Wines is entitled to relief on this basis.

**CONCLUSION**

For the reasons stated above, it is recommended that defendant's Motion to Vacate, Set

---

[6] For example, Wines testified at the hearing that he did not know that Woodson was going to be driving with him to their court appearance in Monroe until the night before the court appearance. (Hr'g. 6-7). However, Wines' mother's testimony at trial would suggest that she had known for quite some time that Wines and Woodson would be driving together to the court appearance. (Tr. 219-20).

Aside, or Correct Sentence under 28 U.S.C. § 2255 be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Thus done and signed, this 26th day of October, 2009, in Monroe, Louisiana.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE