**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**


**UNITED STATES OF AMERICA**                    **CASE NO. 3:03-CR-30013-01**

**VERSUS**                                       **JUDGE ROBERT G. JAMES**

**KENNETH EARL WINES (01)**                      **MAGISTRATE JUDGE HAYES**


## RULING

Before the Court is Defendant Kenneth Wines' Motion for Sentence Reduction Pursuant to Section 404 of the First Step Act ("FSA"). [*See* Doc. Nos. 417, 421]. Pursuant to his memorandum, Wines moves the Court to reduce his 240-month term of imprisonment on his narcotics convictions and to reduce his ten-year term of supervised release to eight years.[1] [Doc. No. 421 at 5]. While Wines does not argue for a specific term of incarceration, he does ask the Court to deviate downward from the Sentencing Guideline range and impose a below-guideline sentence. The government opposes the motion, arguing Wines is not eligible for relief under the FSA. [Doc. No. 424 at 1]. Alternatively, the government asks that the Court "deny a downward variance, and consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when determining whether to reduce the defendant's sentence to a term within his revised Guidelines range." *Id.* For the following reasons, Defendant's motion is GRANTED IN PART, and the Court will REDUCE the sentence of imprisonment on Counts 1, 2 and 3 to 210 months, and will REDUCE his term of supervised release to eight (8) years.

---

[1] Wines is serving a 240-month sentence for his narcotics convictions, and a sixty month sentence, to be served consecutively, for his firearm conviction, thereby resulting in a total term of incarceration of 300 months.

# I.
## BACKGROUND

On April 23, 2003, Wines and two co-defendants were named in a three count Indictment, charging various narcotics offenses. [Doc. No. 1]. Specifically, Wines was charged with Conspiracy to distribute 50 grams or more of cocaine base (Count 1), Conspiracy to distribute marijuana (Count 2), and Possession with Intent to Distribute 50 grams or more of cocaine base (Count 3). On March 28, 2003, a Superseding Indictment issued adding a charge against Wines for Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Count 4). [Doc. No. 115]. On September 13, 2004, the government filed an Information of Prior Narcotics Conviction pursuant to 21 U.S.C. § 851, asserting Wines was subject to an enhanced penalty under 21 U.S.C. § 841, due to a 1993 conviction in the State of Texas for Aggravated Possession with Intent to Deliver a Controlled Substance. [Doc. No. 164]. On September 14, 2004, a jury found Wines guilty on all counts. [Doc. No. 170].

Wines was sentenced on May 16, 2005. [Doc. No. 208]. Based upon the quantity of cocaine base set forth in Counts 1 and 3 of the Superseding Indictment, coupled with the § 851 Notice of Prior Conviction, Wines faced a statutory mandatory minimum sentence of twenty years and a maximum of life in prison. Based upon his relevant conduct, the Presentence Report ("PSR") found Wines accountable for 34,161.21 kilograms of marijuana equivalent, resulting in a Base Offense Level of 38. As the organizer of the conspiracy, two points were added under the guidelines, resulting in a Total Offense Level of 40. [PSR at ¶¶ 22, 26]. Wines' criminal history category was IV, thereby resulting in a sentencing guideline range of 360 months to life. *Id.* at ¶ 63. Wines was sentenced to 360 months on the narcotics offenses, and 60 months on the firearm offense to be served consecutively, thereby resulting in a total term of incarceration of 420 months. [Doc. No. 208]. The Court additionally imposed a ten-year term of supervised release to follow

incarceration. *Id.* Due to subsequent retroactive amendments to the sentencing guidelines, Wines'

sentence on Counts 1, 2 and 3 is now 240 months, and his total term of imprisonment is 300

months. [Doc. Nos. 310, 358 & 389].

## II.
### APPLICABLE LAW

At the time Wines was sentenced, distribution of 50 grams or more of cocaine base

subjected a defendant to a mandatory minimum sentence of ten years and a maximum sentence of

life imprisonment; however, if a defendant had a prior felony drug conviction, his mandatory

minimum sentence increased to twenty years in prison. 21 U.S.C. § 841(b)(1)(A) (West 2005).

The statute additionally mandated a five-year term of supervised release, enhanced to ten years if

the defendant had a prior conviction for a felony drug offense. *Id*. On August 3, 2010, after more

than two decades of substantial criticism from the Sentencing Commission and others in the law

enforcement community that the harsh treatment of crack cocaine offenses was fundamentally

unfair when compared to offenses involving powder cocaine, Congress passed the Fair Sentencing

Act. *Dorsey v. United States*, 567 U.S. 260, 268 (2012). Section 2 of the Fair Sentencing Act

increased the quantity of crack cocaine required to trigger the ten-year mandatory minimum

sentence from 50 grams to 280 grams. *Id.* at 269. The Fair Sentencing Act took effect on August

3, 2010 but applied only to sentences imposed thereafter. *Id.* at 264.

In 2018, Congress passed the First Step Act, which made the revised crack cocaine

minimums established by the Fair Sentencing Act retroactive. First Step Act of 2018 ("FSA"),

Pub. L. No. 115-391, § 404, 132 Stat 5194 (2018). The First Step Act provides in relevant part:

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered
> offense" means a violation of a Federal criminal statute, the statutory penalties
> for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 .
> . . , that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

*Id.*

## III.
### ANALYSIS

### A.      Whether Defendant is eligible for relief under the First Step Act

The government contends Wines is ineligible for relief due to the amount of cocaine base attributed to him in the PSR. [Doc. No. 424 at 5]. In other words, the government contends it is the offense conduct that determines eligibility under the First Step Act, rather than the statute underlying a defendant's conviction and penalty. While the government "recognizes that this argument was recently rejected by the Fifth Circuit, it nevertheless makes the argument "to preserve it for future proceedings in this case." *Id.* The Court agrees with the government that this argument is now foreclosed by the Fifth Circuit. *United States v. Jackson*, 945 F.3d 315, 320 (5th Cir. 2019) ("[W]hether a defendant has a 'covered offense' under section 404(a) depends only on the statute under which he was convicted."); *see also United States v. Thompson*, 404 F.Supp.3d 1003, 1006-07, 1011 (W.D.La. 2019); *United States v. Curry*, 5:02-CR-50088, 2019 WL 6826528, at *3-4 (W.D. La. Dec. 13, 2019).

In this matter, the Court finds Wines meets all requirements for eligibility under section 404 of the FSA: Wines was convicted of violating a statute whose penalties were modified by the Fair Sentencing Act, his violation occurred before August 3, 2010, and Wines has not filed a previous motion seeking First Step Act relief, nor was his sentence "previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act." Accordingly, the Court finds Wines is eligible for relief under the First Step Act.

**B.      Whether Relief is Warranted**

In determining the appropriate sentence, the Court has considered the statutory range, the applicable sentencing guidelines range, the sentencing factors set forth in 18 U.S.C. § 3553(a), and pre- and post-sentencing conduct. *See e.g. Jackson*, 945 F.3d at 321-22; *United States v. Williams*, 943 F.3d 841, 843-44 (8th Cir. 2019) (citing *Pepper v. U.S.*, 562 U.S. 476, 504 (2011)).[2] Wines was convicted of conspiracy to distribute fifty grams or more of cocaine base and possession with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1). With the application of the 21 U.S.C. § 851 enhancement, his statutory sentencing range is ten years to life. 21 U.S.C. § 841(b)(1)(B). Wines' revised sentencing guideline range on Counts 1, 2 and 3 is 210 to 262 months incarceration.

The government argues that after consideration of the nature and circumstances of the offense, the Court should exercise its discretion and either deny relief or limit any reduction to a sentence within the sentencing guideline range. [Doc. No. 424 at 3-5]. In support, the government

---

[2] *See also* United States Sentencing Commission, Office of Education and Sentencing Practice, *FIRST STEP ACT*, p. 7, https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf (last visited March 9, 2020) ("[T]he courts should consider the guidelines and policy statements, along with the other 3553(a) factors, during the resentencing.").

reminds the Court that Wines was the organizer of the criminal conspiracy and directed his accomplices to transport the narcotics at issue. [Doc. No. 424 at 3]. The government further argues:

> The crack quantity that drives the defendant's current Guidelines range was not the result of an extrapolation from his confession. Police recovered 235 grams of crack from the defendant's accomplice who had picked it up from the defendant, and another 262 grams of crack was recovered from the defendant's house. PSR ¶¶ 9, 16. The defendant was not a low-level drug dealer; he had over $31,000 of drug proceeds stored in his house. PSR ¶ 16. He also had six pistols and a semi-automatic rifle in his house, which he used to further his crack enterprise. PSR ¶ 16.

*Id.* at 3-4. The government additionally argues Wines' criminal history weighs against relief, as it "includes convictions for cocaine distribution, assault, and several convictions for the illegal possession of firearms." *Id.* at 4. According to the government, Wines "squandered multiple instances of judicial leniency, including suspended sentences with periods of probation for nearly every one of his prior convictions." *Id.* The government points out "defendant has received the benefit of several sentencing reductions," and his current sentence is within his revised sentencing guidelines range. *Id.* Finally, the government argues Wines post-sentencing conduct does not warrant further relief. *Id.* at 4-5.

In support of a non-guideline sentence, defense counsel argues Wines' criminal history primarily involves non-violent offenses, and argues that Wines has matured over his time spent in BOP custody. [Doc. No. 421 at 3]. Counsel notes Wines' difficult upbringing - Wines' father was sentenced to Louisiana State Penitentiary at Angola for murder when Wines was a small child; Wines helped his mother rear his four younger siblings while his father was incarcerated; Wines began working with his mother on cotton and potato farms in Lake Providence, Louisiana, at age eleven to assist in supporting the family. *Id.* at 4; PSR at ¶ 48. Counsel notes at the time of his arrest on this offense, Wines had been raising one of his children as a single parent for ten years, after that child was taken from his mother's custody by Louisiana authorities due to abuse. [Doc.

No. 421 at 4; PSR at ¶ 49]. Counsel further notes at the time of Wines' arrest on the instant offense, Wines had been struggling with a daily marijuana habit for approximately thirteen years. As to post-sentencing rehabilitation, counsel points to the many educational and vocational courses Wines has completed while in custody. [Doc. No. 421 at 4]. While counsel admits Wines has had a number of disciplinary sanctions while in custody, he argues "none are for fighting or violent offenses." *Id.* Finally, counsel notes Wines' case manager writes in his Progress Report that "Mr. Wines has a good rapport with both peers and staff alike. His interactions with unit team has been pleasant and no issues have emerged during his brief stay at Fort Worth."[3] *Id.* at 4-5.

The Court finds both parties have accurately set forth the nature and circumstances of the offense and the history and characteristics of this Defendant. The Court would additionally note that Wines' criminal history shows that from the ages of 18 to 26, his more troubling convictions include possession with intent to deliver cocaine (between 28 – 200 grams), two convictions for the unlawful carrying of a weapon, and assault. PSR at ¶¶ 34-39. While Wines does have a rather lengthy BOP disciplinary record, his last infraction was in 2017, and none of his violations appear to be violent. Wines most troubling offenses include four incidents of possessing intoxicants from 2006 to 2011, and one incident of possessing a dangerous weapon in 2010 for which he lost 27 days of good conduct time, as well as other privileges. The bulk of Wines' disciplinary report consists of six incidents involving phone abuse, which occurred from 2013 through 2017. In a letter to the Court, Wines explains that when he entered into BOP custody, he turned to alcohol "to ease the pain after receiving 35 years and losing my mom and many other family members." [Doc. No. 421-2]. Wines states he felt "alone and empty on the inside" until he met his wife about six years ago. *Id.* As to his phone abuse infractions, Wines explains, "trying to build a marriage

---

[3] At the time the report was generated, Wines had been at FMC Fort Worth for approximately a year and a half. [Doc. No. 421-1].

from in here required more [than] the 300 minutes a month." *Id.* The Court notes Wines has maintained clear conduct for the last two and a half years, BOP does not consider him a "management concern," he works as an Orderly and his work is deemed satisfactory by his supervisor, he earned his GED in 2011, and his security level is low. [Doc. No. 421-1]. Wines is now 46 years old and has been in custody for this offense for approximately sixteen and a half years.

After consideration of the § 3553(a) factors, including the history and characteristics of Mr. Wines, the need to afford adequate deterrence to criminal conduct and to promote respect for the law, the parties' arguments, and Congress's intent in passage of the First Step Act, the Court determines that a reduction of Defendant's sentence of imprisonment on Counts 1, 2 and 3 to 210 months is sufficient but not greater than necessary to comply with the purposes of sentencing. Such a sentence is a substantial prison term, commensurate with the crimes Wines committed. In this Court's opinion, a greater sentence is not necessary to prevent unwarranted departures when compared with similar sentences in this era. For the same reasons, the Court will reduce the term of supervised release to eight years. Accordingly,

IT IS HEREBY ORDERED that the Motion for Sentence Reduction Pursuant to Section 404 of the First Step Act [Doc. Nos. 417, 421] is GRANTED, and the Court will issue an amended judgment reducing Wines' term of incarceration on Counts 1, 2 and 3 to 210 months, and reducing his term of supervised release to eight years. The Court additionally RECOMMENDS that the Bureau of Prisons place Defendant in a Residential Reentry Center for the maximum portion of his final months of imprisonment as BOP deems appropriate, in order to afford Wines "a reasonable opportunity to adjust to and prepare for [his] reentry . . . into the community." 18 U.S.C.

§ 3624(c)(1). Except as modified in this paragraph, all other provisions of the Judgment imposed

on May 16, 2005 [Doc. No. 208] REMAIN in effect.

SIGNED this 25th day of March, 2020.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE